1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

LOUISIANA MUNICIPAL POLICE
EMPLOYEES RETIREMENT
SYSTEM,

        Plaintiff,

v.

STEPHEN A. WYNN, et al.,

        Defendants.

2:12-CV-509 JCM (GWF)

**ORDER**

      Presently before the court is defendants Stephen A. Wynn, Linda Chen, Russell Goldsmith, Ray R. Irani, Robert J. Miller, John A. Moran, Marc D. Schorr, Alvin V. Shoemaker, D. Boone Wayson, and Allan Zeman's motion to dismiss. (Docs. # 109, 103).[1] Defendants Elaine P. Wynn (doc. # 102), and Wynn Resorts, Limited (doc. # 104) joined the motion to dismiss. Plaintiffs Louisiana Municipal Police Employees' Retirement System, Boilermakers Lodge No. 154 Retirement Fund, Maryanne Solak, and Excavators Union Local 731 Welfare Funds (collectively,

---

[1] Defendants also request the court to take judicial notice of two orders by Nevada state court (Ex. A & Ex. C) and a publication by the Nevada Secretary of State (Ex. B). (Doc. # 101). Plaintiffs opposed the request. (Doc. # 113). Defendants replied. (Doc. # 118). Defendants also submitted a declaration in support of their motion. (Doc. # 100).

**James C. Mahan**
**U.S. District Judge**

1  "plaintiffs") responded. (Doc. # 114).[2] Defendants replied. (Doc. # 116).[3] Defendants Elaine P.

2  Wynn (doc. # 119), and Wynn Resorts, Limited (doc. # 120) joined the reply.

3  **I.     Factual background**

4         This is a shareholder derivative action on behalf of nominal defendant Wynn Resorts Limited

5  ("Wynn Resorts" or the "company") against eleven directors of the twelve person board of directors.[4]

6  The director defendants are Stephen A. Wynn ("Wynn"), Linda Chen ("Chen"), Russell Goldsmith

7  ("Goldsmith"), Ray R. Irani ("Irani"), Robert J. Miller ("Miller"), John A. Moran ("Moran"), Marc

8  D. Schorr ("Schorr"), Alvin V. Shoemaker ("Shoemaker"), D. Boone Wayson ("Wayson"), Allan

9  Zeman ("Zeman"), and Elaine P. Wynn ("E. Wynn") (collectively, "defendants").

10        In 2006, Wynn Resorts opened a hotel in Macau under a land concession agreement granted

11  by the Macau government,[5] with a term running from 2002 to 2022. (Doc. # 95, ¶¶ 3, 51). In

12  February 2006, the company announced that it had submitted an application to the Macau

13  government for a second land concession agreement to build a new casino resort. (*Id.*, ¶¶ 3, 53).

14  After five years, the second land concession agreement had still not been approved. (*Id.*, ¶¶ 3-4). In

15  May 2011, defendants approved a $135 million donation to the University of Macau's Development

16  Foundation (the "Macau donation"). (*Id.*, ¶ 4). All but one member of the Wynn Resorts's board of

17  directors (the "board") approved the donation. (*Id.*, ¶¶ 4, 8). Director Kazuo Okada ("Okada") did

18  not approve the donation. (*Id.*). The Macau donation consisted of a $25 million donation made in

19  2011, and a commitment to make additional donations of $10 million per year for each of the

20  calendar years from 2012 to 2022. (*Id.*, ¶ 4). In February 2012, the Securities and Exchange

21  Commission (the "SEC") notified Wynn Resorts that it had commenced an informal inquiry into the

22  Macau donation. (*Id.*, ¶ 67).

23        Plaintiffs allege that the Macau donation represented an improper attempt by defendants to

24  ──────────────────

25        [2] Plaintiff filed a declaration in support of their response. (Doc. # 115).

26        [3] Defendants filed a supplemental declaration in support of their reply. (Doc. # 117).

27        [4] Kazuo Okada was terminated pursuant to a voluntary dismissal. (Doc. # 107).

28        [5] Macau is a special administrative region of the People's Republic of China. (Doc. # 95, ¶ 2).

1    influence the Macau government to expedite approval of the second land concession agreement. (*Id.*,

2    ¶¶ 6, 56). Plaintiffs allege that defendants breached their fiduciary duties and committed corporate

3    waste by approving the Macau donation resulting in "the cost of defending Wynn Resorts against

4    government investigations and the penalties, fines and other liabilities and expenses associated with

5    those investigations." (*Id.*, ¶¶ 5, 131-32, 135).

6         In relation to the Macau donation, Okada called into question whether the magnitude of the

7    donation was an appropriate use of corporate funds in the company's best interests. (*Id.*, ¶¶ 8, 66,

8    79). Okada also demanded to investigate the company's records related to the donation. (*Id.*, ¶¶ 8,

9    10, 63, 66).

10        In November 2011, the board retained Freeh Sporkin & Sullivan, LLP ("Freeh") to

11   investigate whether Okada was "suitable" to own shares of Wynn Resorts. (*Id.*, ¶¶ 9, 64-65). Based

12   on Freeh's conclusions, the board forcibly redeemed Okada's $2.77 billion stake[6] in exchange for

13   a promissory note worth $1.9 billion. (*Id.*, ¶¶ 11, 71-72). The board's justification for removing

14   Okada as an "unsuitable" shareholder was that he was a threat to the company's Nevada gaming

15   license. (*Id.*, ¶¶ 11, 71, 117). In February 2012, the board sued Okada and the two entities he

16   controls–Aruze and Universal Entertainment Corp.–for breach of fiduciary duty. (*Id.*, ¶ 70). In March

17   2012, the entities filed a counterclaim challenging the company's redemption of his shares. (*Id.*, ¶

18   74).

19        Plaintiffs claim that defendants breached their fiduciary duties by redeeming Okada's shares

20   because the redemption replaced Okada's equity stake in the company with a promissory note, a

21   change which lacked a valid corporate purpose. (*Id.*, ¶¶ 11, 131). Plaintiffs also claim that the

22   redemption wasted the company's assets because it encumbered the company with a $1.9 billion

23   liability and caused it to incur legal fees. (*Id.*).

24        Plaintiffs allege the following claims against defendants: (1) breach of fiduciary duty; (2)

25   waste of corporate assets; (3) permanent injunction; and (4) unjust enrichment.

26

27        [6] Okada's stake in Wynn Resorts is held primarily through Aruze USA, Inc. ("Aruze"), an entity he
28   controls. (Doc. # 95, ¶ 11).

**James C. Mahan**
**U.S. District Judge**                                                  - 3 -

1    **II.**     **Legal standards**

2            **A.**     **Motion to dismiss pursuant to Rule 12(b)(6)**

3            A court may dismiss a plaintiff's complaint for "failure to state a claim upon which relief can

4    be granted." Fed. R. Civ. P. 12(b)(6). A properly pled complaint must provide "[a] short and plain

5    statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *Bell*

6    *Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While Rule 8 does not require detailed factual

7    allegations, it demands "more than labels and conclusions" or a "formulaic recitation of the elements

8    of a cause of action." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (citation omitted).

9            "Factual allegations must be enough to rise above the speculative level." *Twombly*, 550 U.S.

10   at 555. Thus, to survive a motion to dismiss, a complaint must contain sufficient factual matter to

11   "state a claim to relief that is plausible on its face." *Iqbal*, 129 S.Ct. at 1949 (citation omitted).

12          In *Iqbal*, the Supreme Court clarified the two-step approach district courts are to apply when

13   considering motions to dismiss. First, the court must accept as true all well-pled factual allegations

14   in the complaint; however, legal conclusions are not entitled to the assumption of truth. Id. at 1950.

15   Mere recitals of the elements of a cause of action, supported only by conclusory statements, do not

16   suffice. *Id.* at 1949.

17          Second, the court must consider whether the factual allegations in the complaint allege a

18   plausible claim for relief. *Id.* at 1950. A claim is facially plausible when the plaintiff's complaint

19   alleges facts that allows the court to draw a reasonable inference that the defendant is liable for the

20   alleged misconduct. *Id.* at 1949.

21          Where the complaint does not permit the court to infer more than the mere possibility of

22   misconduct, the complaint has "alleged – but not shown – that the pleader is entitled to relief." *Id.*

23   (internal quotations omitted). When the allegations in a complaint have not crossed the line from

24   conceivable to plausible, plaintiff's claim must be dismissed. *Twombly*, 550 U.S. at 570.

25          The Ninth Circuit addressed post-*Iqbal* pleading standards in *Starr v. Baca*, 652 F.3d 1202,

26   1216 (9th Cir. 2011). The *Starr* court stated, "First, to be entitled to the presumption of truth,

27   allegations in a complaint or counterclaim may not simply recite the elements of a cause of action,

28

**James C. Mahan**
**U.S. District Judge**                                                    - 4 -

1   but must contain sufficient allegations of underlying facts to give fair notice and to enable the

2   opposing party to defend itself effectively. Second, the factual allegations that are taken as true must

3   plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to

4   be subjected to the expense of discovery and continued litigation." *Id.*

5           **B.       Motion to dismiss pursuant to Rule 23.1**

6           Federal Rule of Civil Procedure 23.1(a) imposes a heightened pleading standard when "one

7   or more shareholders or members of a corporation or an unincorporated association bring a

8   derivative action to enforce a right that the corporation or association may properly assert but has

9   failed to enforce." FED.R.CIV.P. 23.1(a). Under this standard, the complaint must "state with

10  particularity: (A) any effort by the plaintiff to obtain the desired action from the directors or

11  comparable authority and, if necessary, from the shareholders or members; and (B) the reasons for

12  not obtaining the action or not making the effort." FED.R.CIV.P. 23.1(b)(3); *see also Potter v.*

13  *Hughes*, 546 F.3d 1051, 1056 (9th Cir. 2008) (explaining that a plaintiff is able to bring a

14  shareholder derivative lawsuit if: (1) the plaintiff owned shares in the corporation at the time of the

15  disputed transaction; and (2) the plaintiff alleged with particularity the efforts, if any, made by the

16  plaintiff to obtain the action the plaintiff desires from the directors). This requirement operates as

17  a threshold to insure that plaintiffs exhaust intracorporate remedies so that courts may properly focus

18  on the motivations fueling a board's decision rather than its particular merits. *See Iron Workers*

19  *Local No. 25 Pension Fund ex rel. Monolithic Power Sys., Inc. v. Bogart*, case no. 11-4604 PSG,

20  2012 WL 2160436, at *2 (N.D. Cal. June 13, 2012).

21          Rule 23.1 does not establish the circumstances under which demand would be futile; rather,

22  the law of the Wynn Resorts's incorporating state, Nevada, sets that standard. *In re Silicon Graphics,*

23  *Inc. Secs. Litig.*, 183 F.3d 970, 989–90 (9th Cir. 1999), *abrogated on other grounds as recognized*

24  *in S. Ferry LP, # 2 v. Killinger*, 542 F.3d 776, 784 (9th Cir. 2008). The Nevada Supreme Court

25  clarified Nevada law regarding demand futility, adopting the approach developed by the Delaware

26  Supreme Court. *See Shoen v. SAC Holding Corp.*, 122 Nev. 621, 137 P.3d 1171, 1184 (Nev. 2006)

27  (following *Aronson v. Lewis*, 473 A.2d 805, 812 (Del. 1984)*, overruled in part on other grounds by*

28

**James C. Mahan**
**U.S. District Judge**

- 5 -

1   *Brehm v. Eisner*, 746 A.2d 244, 254 (Del. 2000), *and modified by Rales v. Blasband*, 634 A.2d 927,

2   933 (Del.1993)); *see also In re Amerco Derivative Litig.*, 127 Nev. Adv. Op. 17, 252 P.3d 681 (Nev.

3   2011).

4        The first prong of the *Aronson* test asks whether the shareholder has pleaded "with

5   particularity facts that establish that demand would be futile because the directors are not

6   independent or disinterested." *In re J.P. Morgan Chase & Co. S'holder Litig.*, 906 A.2d 808, 820

7   (Del.Ch. 2005) (internal citations omitted). The second prong of the test asks whether there is a

8   reasonable doubt that "the challenged transaction was otherwise the product of a valid exercise of

9   business judgment." *Id.* These prongs are in the disjunctive, and therefore, "if either prong is

10  satisfied, demand is excused." *Brehm*, 746 A.2d at 256.

11       A derivative plaintiff's failure to adequately plead futility of demand justifies "dismissal of

12  the complaint . . . ." *Shoen*, 137 P.3d at 1180.

13  **III.    Judicial notice**

14       Review on a motion pursuant to Fed.R.Civ.P. 12(b)(6) is normally limited to the complaint

15  itself. *See Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001). If the district court relies

16  on materials outside the pleadings in making its ruling, it must treat the motion to dismiss as one for

17  summary judgment and give the non-moving party an opportunity to respond. FED.R.CIV.P. 12(b);

18  *see United States v. Ritchie*, 342 F.3d 903, 907 (9th Cir.2003). "A court may, however, consider

19  certain materials—documents attached to the complaint, documents incorporated by reference in the

20  complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for

21  summary judgment." *Ritchie*, 342 F.3d at 908.

22       A court may also treat certain documents as incorporated by reference into the plaintiff's

23  complaint if the complaint "refers extensively to the document or the document forms the basis of

24  the plaintiff's claim." *Id.* at 908. If adjudicative facts or matters of public record meet the

25  requirements of Fed. R. Evid. 201, a court may judicially notice them in deciding a motion to

26  dismiss. *Id.* at 909; *see* FED.R.EVID. 201(b) ("A judicially noticed fact must be one not subject to

27  reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial

28

James C. Mahan
U.S. District Judge

1   court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot
2   reasonably be questioned."); *see also Carstarphen v. Milsner*, 594 F. Supp. 2d 1201, 1207 (D. Nev.
3   2009).

4          "Court orders and filings are the type of documents that are properly noticed under [Rule
5   201(b) ]." *Neilson v. Union Bank of Cal.*, 290 F.Supp.2d 1101, 1112 (C.D. Cal. 2003). In particular,
6   courts may take judicial notice of proceedings of other courts if those proceedings have a "direct
7   relation to matters at issue." *United States ex rel. Robinson Rancheria Citizens Council v. Borneo*,
8   971 F.2d 244, 248 (9th Cir. 1992) (citations omitted). Nonetheless, the court can only take judicial
9   notice of these documents for the "limited purpose of recognizing the 'judicial act' that the order
10   represents on the subject matter of litigation." *Neilson*, 290 F.Supp.2d at 1112 (quoting *United States*
11   *v. Jones*, 29 F.3d 1549, 1553 (11th Cir. 1994)).

12          Defendants request the court to take judicial notice of two state court orders. (Doc. # 101,
13   Ex. A & Ex. C). Defendants represent that the purpose of requesting judicial notice is that these
14   cases did not appear to be readily available in an official reporter and were enclosed for the court's
15   convenience. Since state court authority on the issue of futility is relevant to this court's analysis, the
16   court takes judicial notice for the "limited purpose of recognizing the 'judicial act,'" *Neilson*, 290
17   F.Supp.2d at 1112, and considers the orders to the extent they are informative.

18          Defendants also request the court to take judicial notice of an online publication of the
19   Nevada Secretary of State. (Doc. # 101, Ex. B). While the court acknowledges that it can take
20   judicial notice of government web sites, *see e.g.*, *In re Amgen Inc. Sec. Litig.*, 544 F. Supp. 2d 1009,
21   1030 (C.D. Cal. 2008), the court does not find it necessary to do so here.[7]

22   . . .

23

24

25          [7] Further, the court takes this opportunity to remind the parties that this is federal court and as a
26   federal court, it follows the Federal Rules of Civil Procedure. *See Erie R. Co. v. Tompkins*, 304 U.S. 64, 58
     S. Ct. 817, 82 L. Ed. 1188 (1938).
27

28

**James C. Mahan**
**U.S. District Judge**

## IV.     Futility discussion

Demand futility analysis is normally conducted on a claim-by-claim basis. *See In re Countrywide Fin. Corp. Deriv. Litig.*, 554 F.Supp.2d 1044, 1080 (C.D.Cal. 2008) (citation omitted). Here, however, the parties have not organized their arguments claim-by-claim. The court will proceed with its analysis as argued by the parties, but remains mindful of the requirement that demand be excused for each claim individually.

The Wynn Resorts's board consisted, as of the time this lawsuit was filed, of twelve directors. Thus, to establish demand futility, plaintiffs must have pleaded facts raising a reasonable doubt regarding the capability of at least six of those directors to consider impartially a demand with regard to each claim. *See Shoen*, 137 P.3d at 1184 n. 62.

### A.     Disinterested and independent

#### I.     Disinterest

"[T]o show interestedness, a shareholder must allege that a majority of the board members would be materially affected, either to [their] benefit or detriment, by a decision of the board, in a manner not shared by the corporation and the stockholders." *Shoen*, 137 P.3d at 1183 (citation omitted, edit in original). An interested director is one who has "divided loyalties" or stands to receive a financial benefit from the transaction at issue. *Id.* at 1182.

However, "[a]llegations of mere threats of liability through approval of the wrongdoing or other participation, [ ] do not show sufficient interestedness to excuse the demand requirement." *Id.* at 1183. "[A]s the Delaware courts have indicated, interestedness because of potential liability can be shown only in those rare case[s] . . . where defendants' actions were so egregious that a substantial likelihood of director liability exists." *Id.* at 1183-84 (citation omitted, edit in original).

Plaintiffs argue that a majority of the Wynn Resorts's board lacks disinterestedness because eleven of the company's twelve directors face a substantial likelihood of liability for approving the Macau donation and the redemption of Okada's shares. (Doc. # 114, 17:14-17). Further, plaintiffs allege that the redemption of Okada's shares benefitted Wynn differently from other shareholders.

James C. Mahan
U.S. District Judge

- 8 -

### a.      Macau donation

Plaintiffs assert that defendants face a substantial likelihood of liability for approving the Macau donation because they knew it was an improper bribe that exposed the company to liability for violating the Foreign Corrupt Practices Act ("FCPA"). Thus, plaintiffs attempt to show interestedness by arguing that defendants' approval of the Macau donation was a breach of fiduciary duty of loyalty because they knowingly engaged in bribery.[8]

However, plaintiffs' complaint fails to sufficiently allege that defendants *knew* that the Macau donation was improper. (*See* doc. # 95, ¶¶ 3-5, 38-43, 52-53, 56-58, 66-67, 77-78, 88-92, 115). Instead, the allegations establish that defendants knew of the company's obligations not to engage in bribery. And on the one occasion that plaintiffs alleged knowledge of wrongdoing on behalf of defendants, the allegation, alone is insufficient under the heightened pleading standard of Rule 23.1(a) to establish a substantial likelihood of personal liability for defendants. (*See id.*, ¶ 6).

Because NRS 78.138(7) requires intent or knowledge on the part of directors in order to hold them individually liable for their conduct, it would follow that failure to allege intent or knowledge would render defendants disinterested because they would not face a substantial likelihood of liability. Without allegations establishing that defendants acted intentionally or knowingly, defendants' liability is a "mere threat,"*Ash v. McCall*, CIV.A. 17132, 2000 WL 1370341, at *10 (Del. Ch. Sept. 15, 2000), which is insufficient to create reasonable doubt that any defendant faces a "substantial likelihood" of personal liability for approving the Macau donation.

### b.      Redemption of Okada's shares

Plaintiffs argue that the redemption of Okada's shares was in attempts to discredit Okada's influence at the company and in furtherance of defendants' own self-interests, and was not in the best interest of Wynn Resorts or its shareholders. Plaintiffs specifically allege that the board redeemed these shares "solely to perpetuate [Wynn's] control over the company and the board." (Doc. # 95, ¶¶ 104, 61-62). Plaintiffs assert that the redemption was not undertaken to protect the company's

---

[8] NRS 78.138(7) provides that in order to state a claim for damages against a director or officer for breach of fiduciary duty, a plaintiff must allege that the defendant engaged in "intentional misconduct, fraud or a knowing violation of law."

James C. Mahan
U.S. District Judge

1    gaming licenses as defendants purported, but rather to retaliate against Okada for raising questions

2    about the Macau donation. Plaintiffs argue that it is impossible for the redemption to protect the

3    company's gaming license by merely converting Okada from an equity holder to a debt holder.

4         Plaintiffs assert that the redemption of Okada's shares materially affects Steve Wynn's

5    control over the board and company. But regardless of whether this redemption actually decreases

6    Wynn's voting power pursuant to the Stockholder Agreement as defendants argue, plaintiff makes

7    this allegation to Wynn only. And any allegation that the redemption benefitted Wynn only is

8    insufficient to establish that "a majority of the board members would be materially affected . . . ,"

9    *Shoen*, 137 P.3d at 1183, by the challenged conduct and thus are interested.

10        Plaintiff argues that NRS § 463.643(7) prohibits "unsuitable" persons from holding voting

11   or debt securities in a gaming company. But this is not so. The Gaming Control Act provides that

12   a holder of 10 percent or more of any class of voting securities in a publicly traded corporation with

13   the Nevada Gaming Commission "shall apply to the Commission for a finding of suitability." NRS

14   § 463.643(4). By contrast, a person who acquires the debt of a publicly traded registrant does not

15   face a mandatory application requirement. Instead, the statute provides that a debt holder "may be

16   required to be found suitable if the Commission has reason to believe that the person's acquisition

17   of the debt security would otherwise be inconsistent with the declared policy of this state." NRS §

18   463.643(2).

19        Based on this distinction of "suitability" between equity and debt holders, it is not inherently

20   improper for the board to have redeemed Okada's equity share in the company in exchange for debt

21   based on the directors' belief that Okada was "unsuitable" or that such redemption would protect the

22   company's gaming licenses. Therefore, such an allegation does not demonstrate intentional

23   misconduct to establish a breach of fiduciary duty and, in turn, establish a substantial likelihood of

24   liability.

25        Plaintiffs also argue that the board's filing of a lawsuit at 2:14 a.m. the morning after the

26   board deemed Okada "unsuitable" and redeemed his shares, is a sufficient allegation to establish

27   intentional misconduct on behalf of defendants under NRS § 78.138(7). However, the court does not

28

**James C. Mahan**
**U.S. District Judge**

- 10 -

find the inference plaintiffs urge the court to make compelling. Preemptive use of the legal system cannot, as a matter of course, indicate knowledge or intentional misconduct on behalf of those filing the lawsuit. Such an inference would deter those availing themselves, in good faith, of the justice system. Thus, the court declines to draw this inference. Further, even if the court did draw this inference, this allegation is insufficient under Rule 23.1's heightened pleading standard to establish a substantial likelihood of liability.

Plaintiffs also argue that the board's failure to disclose that it had removed Okada as vice-chairman of the board until more than three months after the fact establishes a substantial likelihood of liability for breach of fiduciary duty. But this allegation falls short of establishing intentional misconduct. If anything, a failure to disclosure can be construed as an omission. Under NRS § 78.138(7), a director does not face personal liability for an omission that does not result from some intent or knowledge. Thus, the allegation cannot serve to establish a substantial likelihood of liability for breach of fiduciary duty.

### ii.     Independence

Independence exists when a director's decision is based on the "corporate merits of the subject before the board" rather than on "extraneous considerations or influences." *Aronson*, 473 A.2d at 816. Such "extraneous conditions or influences" may include "a material financial or familial interest" or current or past business and employment relationships with each other and the entities involved. *See Grimes v. Donald*, 673 A.2d 1207, 1216 (Del. 1996) *overruled in part by Brehm v. Eisner*, 746 A.2d 244 (Del. 2000); *Grace Bros., Ltd. v. Uniholding Corp.*, CIV.A. 17612, 2000 WL 982401, at *10 (Del. Ch. July 12, 2000); *c.f. In re AMERCO*, 252 P.3d at 706 ("[w]hile a close family relationship can disqualify a director . . . , business, social, and more remote family relationships are not disqualifying, without more."); *see also Beam ex rel. Martha Stewart Living Omnimedia, Inc. v. Stewart*, 845 A.2d 1040, 1051 (Del. 2004) (allegation that directors "moved in the same social circles, attended the same weddings, developed business relationships before joining the board, and described each other as 'friends,' . . . are insufficient, without more, to rebut the presumption of independence.").

**James C. Mahan**
**U.S. District Judge**

1    To raise reasonable doubt as to a director's independence, a shareholder must allege that a

2    majority of the board members "is beholden to directors who would be liable,"or is otherwise

3    interested so that he would be unable to consider a demand on its merits. *Shoen*, 137 P.3d at 1183

4    (citation omitted).

5    As an initial consideration, plaintiffs need allege only that six of the twelve person board

6    lacked independence. *See Shoen*, 137 P.3d at 1184 n. 62. Further, the court takes judicial notice of

7    the Wynn Resorts's 2011 proxy statement (doc. # 115, ex. B, p. 20).[9] The proxy statement

8    acknowledges that Wynn, E. Wynn, Chen and Schorr are not independent under the NASDAQ

9    listing standards which are virtually identical to the standards for establishing director independence

10   under Nevada demand futility law. *See In re Dow Chem. Co. Derivative Litig.*, CIV.A. 4349-CC,

11   2010 WL 66769, at *8 n.43 (Del. Ch. Jan. 11, 2010); *see also In re Countrywide Fin. Corp.*

12   *Derivative Litig.*, 554 F. Supp. 2d 1044, 1080-81 (C.D. Cal. 2008). Thus, the court will only analyze

13   the independence of Goldsmith, Irani, Miller, Moran, Shoemaker, Wayson, and Zeman, to determine

14   if two of these board members lack independence.

15   Plaintiffs argue that the board was beholden to Wynn and that Wynn had a personal interest

16   in the challenged actions, that is the Macau donation and the redemption of Okada's shares. Plaintiffs

17   allege that the board is beholden to Wynn because he "hand-picked" them and he has "business,

18   professional, and personal relationships" with certain directors.

19   For purposes of this analysis, plaintiffs have met their burden under the heightened pleading

20   standard of Rule 23.1 that Wynn was interested in the redemption of Okada's shares, at least to the

21   extent that the redemption resulted in Okada no longer holding the position of the company's largest

22   shareholder.[10]

23

24   [9] The court may treat certain documents as incorporated by reference into the plaintiff's complaint
     if the complaint "refers extensively to the document or the document forms the basis of the plaintiff's claim."
25   *Ritchie,* 342 F.3d at 908. Here, the plaintiffs reference the 2011 proxy statement in paragraph 111 of their
     complaint for precisely this proposition: the dependence of Wynn, E. Wynn, Chen, and Schorr.
26

27   [10] The court does not make any determination on whether Wynn is a "controlling shareholder" or the
     extent to which Wynn's voting power increased or deceased in relation to the election of directors or other
28   matters voted upon by shareholders.

**James C. Mahan**
**U.S. District Judge**

1   Plaintiffs allege only that some of the remaining directors have been friends with Wynn for

2   many years (Miller, Moran, Zeman),[11] were previously employed by Wynn-controlled enterprises

3   (Wayson), or received Wynn's support in philanthropic or political endeavors (Miller and Moran).

4   The court addresses whether the following board members are beholden to Wynn to determine if

5   each lacks independence.

6   **a.   Miller**

7   Plaintiffs allege that Wynn and Miller have been friends for 40 years and that Wynn has

8   played a significant role in Miller's political success. Plaintiff substantiates his allegations by

9   pointing to (1) a $70,000 donation to Miller's 1994 gubernatorial race, (2) a threat Wynn made

10  against an opponent of Miller's in the 1994 election, and (3) Miller testifying on Wynn's behalf in

11  a 1997 libel case.

12  Without more, the court does not find that plaintiffs have met their burden to rebut the

13  presumption of independence. Allegations of friendship, alone, are insufficient–even if the friend

14  did testify on the interested director's behalf. Further, plaintiffs have not alleged a campaign

15  contribution of such a significant magnitude that would lead the court to believe that Miller lacks

16  independence 19 years after the contribution was made.

17  **b.   Moran**

18  Plaintiffs allege that Moran and Wynn have been friends for 30 years. Plaintiffs specially

19  allege that Wynn donated $1 million to the Moran Eye Center at the University of Utah in 1993 and

20  made another "large donation" after the new Moran Eye Center opened in 2007. Plaintiffs also allege

21  that Wynn made a "large donation" to Senator Bob Dole's 1996 presidential campaign to which

22  Moran was the finance chair.

23  After considering whether these allegations cast doubt as to Moran's independence, the court

24  finds that they do not. While $1 million is a considerable amount of money, this donation was made

25  20 years ago and was not a financial gift from which Moran personally benefitted. Further, the other

26

27  ───────────────

[11] Plaintiffs' allegation as to Zeman is only that he and Wynn have a "longstanding personal

28  friendship." (Doc. # 95, ¶ 110). But this is insufficient to show a lack of independence on behalf of Zeman.

1   donations are not alleged with sufficient particularity for the court to draw an inference that Moran

2   would feel beholden to Wynn.

3                                    **c.      Wayson**

4          Plaintiffs allege that Wynn has been close with Wayson since they were young, as their

5   fathers had a business relationship in the 1950s operating a bingo hall together. Plaintiff also points

6   to Wynn's past employment of Wayson and of Wayson's siblings.

7          Beyond the vague allegations of friendship between Wynn and Wayson, plaintiffs do not

8   allege sufficient facts to raise a reasonable doubt as to Wayson's independence. While current

9   employment (outside of that as a director) of Wayson or one of Wayson's sibling might call into

10  question one's independence, no such allegation was made here.

11         Accordingly, plaintiff have not alleged with particularity sufficient facts to show that two

12  more directors lack independence to establish that a majority of the board is interested under *Shoen*

13  to excuse the demand requirement.

14         **B.      Business judgment[12]**

15         Under the second prong of *Aronson*, demand is futile if there is a reasonable doubt that the

16  board's decision was a valid exercise of business judgment. *Shoen*, 137 P.3d at 112; *Aronson*, 473

17  A.2d at 814. The business judgment rule presume that in making a business decision, the directors

18  of a corporation acted on an informed basis, in good faith, and in the honest belief that the action

19  taken was in the company's best interest. *Shoen*, 137 P.3d at 1178-79. To rebut this presumption,

20  plaintiff must allege "facts sufficient to raise (1) a reason to doubt that the action was taken honestly

21  and in good faith or (2) a reason to doubt that the board was adequately informed in making the

22  decision." *In re Walt Disney Co. Derivative Litig.*, 825 A.2d 275, 286 (Del.Ch. 2003).

23

24

25

26          [12] Plaintiffs have not established that a majority of directors is interested. *See Aronson*, 473 A.2d at 812. Although plaintiffs do not directly allege a breach of fiduciary duty as to the duty of care, there are facts

27  that give rise to a duty of care claim. *See Shoen*, 137 P.3d at 1181. On this basis, the court addresses whether plaintiffs have alleged facts with sufficient particularity as to raise a reasonable doubt to rebut the business

28  judgment rule presumption.

1   NRS § 78.138(3) provides that "[d]irectors and officers, in deciding upon matters of business,

2   are presumed to act in good faith, on an informed basis and with a view to the interests of the

3   corporation." "[E]ven a bad decision is generally protected by the business judgment rule's

4   presumption . . . ." *Shoen*, 137 P.3d at 1181. Plaintiff carries a "heavy burden" in this regard. *Id.*

### I.  Macau donation

6   Plaintiffs allege that the Macau donation was a bribe to Macau government officials in

7   exchange for a second land concession to expand Wynn Macau. Plaintiffs' allegation is based on the

8   size and timing of the Macau donation–$135 million, over 10 years, including $25 million two

9   months before the Macau government approved the land concession agreement.

10   Plaintiffs made a single allegation that may be construed as intentional misconduct or a

11   knowing violation of the law (*see* doc. # 95, ¶ 6); however, this allegation alone is insufficient to

12   meet the particularity requirements of Rule 23.1.[13] Even plaintiffs' allegation that the donation was

13   made "[i]n order to push the land concession agreement along," (*id.*, ¶ 56), this allegation is not

14   stated with sufficient particularity to impart bad faith onto the directors. The complaint lacks

15   particular allegations that defendants knew they were engaged in wrongdoing in approving the

16   Macau donation. At most, the complaint alleges that defendants knew the donation was made in an

17   effort to obtain the land concession and recites the obligations of the company under the FCPA;

18   however, this does not demonstrate bad faith on behalf of the directors in approving the Macau

19   donation.

20   Plaintiffs assert that they have met their burden to a raise reasonable doubt as to the directors'

21   good faith intentions in making the Macau donation. However, plaintiffs alleged that the directors

22   made this donation to benefit the company. *See In re Walt Disney Co. Derivative Litig.*, 907 A.2d

23   693, 753 (Del. Ch. 2005) *aff'd*, 906 A.2d 27 (Del. 2006)("Bad faith has been defined as authorizing

24   a transaction 'for some purpose other than a genuine attempt to advance corporate welfare or [when

---

26   [13] Further, to the extent that plaintiffs alleged that each director "knew, or was reckless in not
knowing, that the transfer to [the university] would expose the Company to liability under the FCPA . . ."
27   (doc. # 95, ¶¶ 26, 27, 28, 29, 30, 31, 32, 33, 34, 35, 36), these allegations are not stated with sufficient
particularity to impart bad faith onto the directors.

28

James C. Mahan
U.S. District Judge

- 15 -

1   the transaction] *is known to constitute* a violation of applicable positive law.'") (edit and emphasis

2   in original). Without allegations that the donation was made to advance some interest other than the

3   company's welfare or that the directors had knowledge of the violation of the law, the court finds

4   that the business judgment rule presumption still applies.

5       Directors "have a duty to inform themselves, prior to making a business decision of all

6   material information reasonably available to them" prior to making a decision. *Aronson*, 473 A.2d

7   at 812. Plaintiffs argue that in light of the suspicious circumstances surrounding the donation, the

8   directors failed to consider material that was critical to making an informed decision. Plaintiffs,

9   however, have not met their burden. Limiting itself to reviewing the process the board followed in

10  coming to its decision, the court finds that plaintiffs have not met the heightened pleading standard

11  of Rule 23.1 in alleging what material was reasonably available but not considered.

12      Instead, plaintiffs allege that Wynn purported to have a legal opinion that sanctioned the

13  transaction, but that Wynn did not provide this opinion to the board. This allegation does not

14  establish reason to doubt that the board was adequately informed for two reasons: (1) plaintiffs have

15  not alleged that any defendant, other than Wynn, knew of the legal opinion at the time the transaction

16  was approved; and (2) the legal opinion allegedly is in support of the transaction plaintiffs challenge.

17  Thus, if anything, this legal opinion would have bolstered defendants' position in approving the

18  donation.

19      While the court acknowledges that plaintiffs have alleged facts that lead the court to believe

20  that the size and timing of the donation was "highly suspicious" that alone cannot serve as the basis

21  to rebut the statutory business judgment presumption.

22  . . .

23  . . .

24  . . .

25  . . .

26  . . .

27  . . .

28

**James C. Mahan**
**U.S. District Judge**

1

2

3

4

ii.      **Redemption of Okada's shares**

Plaintiffs allege that converting Okada from an equity holder to a debt holder had no effect on his purported status as an "unsuitable" person[14] and that this conversion encumbered the company with a $1.9 billion debt and associated litigation expenses.

5

6

7

8

9

10

The company's articles of incorporation[15] authorize the directors to redeem the shares of an "unsuitable" shareholder and permits the exchange of a shareholder's equity stake for a promissory note. (Doc. # 100, Ex. 2, Art. VII, §§ 1(j), 2). Thus, the articles envisioned circumstances in which shares would been redeemed in exchange for debt. On this basis, the court does not find that encumbering the company with a debt obligation permitted by the articles of incorporation to fall outside the protections afforded by the business judgment rule.

11

12

13

Accordingly, plaintiffs have failed to demonstrate that they should be excused from the pre-suit demand requirements under either *Aronson* prong. Plaintiffs' complaint shall be dismissed for failure to have adequately pleaded the futility of pre-suit demand.

14

**V.      Leave to amend**

15

16

17

18

19

In their opposition to defendants' motion to dismiss, plaintiffs requested leave to amend. (Doc # 114, 30, n.28). Defendants oppose this request arguing that plaintiffs have already been afforded an opportunity to amend the pleadings once upon consolidation of four separate derivative suits. (Doc. # 116, 19:21-20:1). Considering that plaintiffs have not been afforded an opportunity to amend their complaint with the court's guidance, the court is inclined to permit amendment.

20

. . .

21

. . .

22

23

24

25

[14] The court previously addressed the "suitability" of shareholders, *supra* IV.A.i.b. While, this discussion was in terms of the directors' interestedness, the court finds the analysis applicable here. That is, whether the decision to convert Okada's shares should be afforded the protections of the business judgment rule presumption. The court finds that it does.

26

27

28

[15] The court takes judicial notice of the Wynn Resorts's articles of incorporation (doc. # 100, Ex. 2). The articles of incorporation were relied upon by plaintiffs in their complaint and therefore is proper for the court to consider without converting the instant motion to dismiss into a motion for summary judgment. *See Goodwin* v. *Exec. Tr. Servs., LLC*, 680 F. Supp.2d 1244, 1250 (D. Nev. 2010).

James C. Mahan
U.S. District Judge

- 17 -

1    Under Rule 15(a)(2) leave to amend is to be "freely given when justice so requires." FED. R.

2  CIV. P. 15. In general, amendment should be allowed with "extreme liberality." *Owens v. Kaiser*

3  *Found. Health Plan, Inc.*, 244 F.3d 708, 712 (9th Cir. 2001) (quoting *Morongo Band of Mission*

4  *Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990)). Absent a showing of an "apparent reason"

5  such as undue delay, bad faith, dilatory motive, prejudice to the defendants, futility of the

6  amendments, or repeated failure to cure deficiencies in the complaint, leave to amend should be

7  granted. *Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 538 (9th Cir. 1989).

8    Accordingly, the court will afford plaintiffs an opportunity to amend their complaint. The

9  court reminds plaintiffs that if they choose to amend their complaint, they must comply with the

10 requirements of Local Rule 15-1 and file a motion to amend, attaching the proposed amended

11 complaint. Additionally, if the amended complaint is similarly deficient, the court may conclude that

12 further leave to amend would be futile.

13 **VI.    Conclusion**

14    Accordingly,

15    IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that Stephen A. Wynn, Linda

16 Chen, Russell Goldsmith, Ray R. Irani, Robert J. Miller, John A. Moran, Marc D. Schorr, Alvin V.

17 Shoemaker, D. Boone Wayson, Allan Zeman, Elaine P. Wynn, and Wynn Resorts, Limited's motion

18 to dismiss (docs. # 109, 103) be, and the same hereby is, GRANTED without prejudice.

19    IT IS FURTHER ORDERED that plaintiffs, if they chooses to amend their complaint, file

20 the motion to amend, attaching the proposed amended complaint, within thirty (30) days of the date

21 of this order.

22    DATED February 1, 2013.

23

24    _____

25    **UNITED STATES DISTRICT JUDGE**

26

27

28

James C. Mahan
U.S. District Judge