# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| LOUISIANA MUNICIPAL POLICE EMPLOYEES RETIREMENT SYSTEM,<br><br>    Plaintiff,<br><br>v.<br><br>STEPHEN A. WYNN, et al.,<br><br>    Defendants. | 2:12-CV-509 JCM (GWF) |

**ORDER**

Presently before the court is a motion to dismiss filed by defendants Stephen A. Wynn ("S. Wynn"), Linda Chen ("Chen"), Russell Goldsmith ("Goldsmith"), Ray R. Irani ("Irani"), Robert J. Miller ("Miller"), John A. Moran ("Moran"), Mark D. Schorr ("Schorr"), Alvin V. Shoemaker ("Shoemaker"), D. Boone Wayson ("Wayson"), Elaine P. Wynn ("E. Wynn"), Allen Zeman ("Zeman"), and Wynn Resorts, Limited ("Wynn Resorts"). (Doc. # 130). Plaintiff Louisiana Municipal Police Employees' Retirement System ("LMPERS") filed a response in opposition (doc. # 135), and defendants have replied (doc. # 137).

**I. Factual background**

This is a shareholder derivative action on behalf of nominal defendant Wynn Resorts against eleven members of the twelve-person board of directors. The director defendants are S. Wynn, Chen, Goldsmith, Irani, Miller, Moran, Schorr, Shoemaker, Wayson, E. Wynn, and Zeman (collectively,

**James C. Mahan**
**U.S. District Judge**

"defendants").

In 2006, Wynn Resorts opened a hotel in Macau under a land concession agreement granted by the Macau government, with a term running from 2002 to 2022. (Doc. # 95, at 3). In February 2006, the company announced that it had submitted an application to the Macau government for a second land concession agreement to build a new casino resort. (Doc. # 95, at 3). After five years, the second land concession agreement had still not been approved. (Doc. # 95, at 3).

In May 2011, defendants approved a $135 million donation to the University of Macau's development foundation (the "Macau donation"). (Doc. # 95, at 4). Every member of Wynn Resorts' board of directors (the "board") approved the donation except for director Kazuo Okada ("Okada"). (Doc. # 95, at 4).

The Macau donation consisted of a $25 million charitable transfer made in 2011, and a commitment to make additional transfers of $10 million per year for each of the calendar years between 2012 and 2022. (Doc. # 95, at 3). In February 2012, the Securities and Exchange Commission (the "SEC") notified Wynn Resorts that it had commenced an informal inquiry into the Macau donation. (Doc. # 95, at 4). Plaintiffs do not allege that the SEC escalated its inquiry to an enforcement action or determined that the Macau donation was unlawful. (Doc. # 130, at 5). Furthermore, in February 2013, the Nevada Gaming Control Board ("GCB") investigated the Macau pledge and found no violations. (Doc. # 130, at 6)

Plaintiffs allege that the Macau donation represented an improper attempt by defendants to influence the Macau government to expedite approval of the second land concession agreement. (Doc. # 135, at 2). Plaintiffs allege that defendants breached their fiduciary duties and committed corporate waste by approving the Macau donation resulting in "the cost of defending Wynn Resorts against government investigations and the penalties, fines and other liabilities and expenses associated with those investigations." (Doc. # 95, at 48).

In relation to the Macau donation, Okada called into question whether the magnitude of the donation was an appropriate use of corporate funds. (Doc. # 95, at 24). Okada also demanded to

James C. Mahan
U.S. District Judge

- 2 -

investigate the company's records related to the donation. (Doc. # 95, at 24).

In November 2011, the board retained Freeh Sporkin & Sullivan, LLP ("Freeh") to investigate whether Okada was "suitable" to own shares of Wynn Resorts. (Doc. # 95, at 4). Based on Freeh's conclusions, the board forcibly redeemed Okada's $2.77 billion stake in exchange for a promissory note worth $1.9 billion. (Doc. # 95, at 5, 26). The board's justification for removing Okada as an "unsuitable" shareholder was that he was a threat to the company's Nevada gaming license. (Doc. # 95, at 25-26). In February 2012, the board sued Okada and the two entities he controls–Aruze and Universal Entertainment Corp.–for breach of fiduciary duty. (Doc. # 95, at 25). Plaintiffs claim that the redemption wasted the company's assets because it encumbered the company with a $1.9 billion liability and caused it to incur legal fees. (Doc. # 95, at 29).

Plaintiffs allege four causes of action against defendants: (1) breach of fiduciary duty, (2) waste of corporate assets, (3) permanent injunction, and (4) unjust enrichment.

**II.     Legal standard for motion to dismiss**

A court may dismiss a plaintiff's complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A properly pled complaint must provide "[a] short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While Rule 8 does not require detailed factual allegations, it demands "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (citation omitted).

"Factual allegations must be enough to rise above the speculative level." *Twombly*, 550 U.S. at 555. Thus, to survive a motion to dismiss, a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Iqbal*, 129 S.Ct. at 1949 (citation omitted).

In *Iqbal*, the Supreme Court clarified the two-step approach district courts are to apply when considering motions to dismiss. First, the court must accept as true all well-pled factual allegations in the complaint; however, legal conclusions are not entitled to the assumption of truth. *Id.* at 1950. Mere recitals of the elements of a cause of action, supported only by conclusory statements, do not suffice. *Id.* at 1949.

1  Second, the court must consider whether the factual allegations in the complaint allege a
2  plausible claim for relief. *Id.* at 1950. A claim is facially plausible when the plaintiff's complaint
3  alleges facts that allow the court to draw a reasonable inference that the defendant is liable for the
4  alleged misconduct. *Id.* at 1949.

5  Where the complaint does not permit the court to infer more than the mere possibility of
6  misconduct, the complaint has "alleged – but not shown – that the pleader is entitled to relief." *Id*.
7  (internal quotations omitted). When the allegations in a complaint have not crossed the line from
8  conceivable to plausible, plaintiff's claim must be dismissed. *Twombly*, 550 U.S. at 570.

9  The Ninth Circuit addressed post-*Iqbal* pleading standards in *Starr v. Baca*, 652 F.3d 1202,
10  1216 (9th Cir. 2011). The *Starr* court stated, "First, to be entitled to the presumption of truth,
11  allegations in a complaint or counterclaim may not simply recite the elements of a cause of action,
12  but must contain sufficient allegations of underlying facts to give fair notice and to enable the
13  opposing party to defend itself effectively. Second, the factual allegations that are taken as true must
14  plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to
15  be subjected to the expense of discovery and continued litigation." *Id.*

16  **III.  Legal standard for shareholder derivative claim**

17  Federal Rule of Civil Procedure 23.1(a) imposes a heightened pleading standard when "one
18  or more shareholders or members of a corporation or an unincorporated association bring a
19  derivative action to enforce a right that the corporation or association may properly assert but has
20  failed to enforce." Fed. R. Civ. P. 23.1(a). Under this standard, the complaint must "state with
21  particularity: (A) any effort by the plaintiff to obtain the desired action from the directors or
22  comparable authority and, if necessary, from the shareholders or members; and (B) the reasons for
23  not obtaining the action or not making the effort." Fed. R. Civ. P. 23.1(b)(3); *see also Potter v.*
24  *Hughes*, 546 F.3d 1051, 1056 (9th Cir. 2008) (explaining that a plaintiff is able to bring a
25  shareholder derivative lawsuit if: (1) the plaintiff owned shares in the corporation at the time of the
26  disputed transaction; and (2) the plaintiff alleged with particularity the efforts, if any, made by the
27  plaintiff to obtain the action the plaintiff desires from the directors). This requirement operates as

28

James C. Mahan
U.S. District Judge

- 4 -

a threshold to ensure that plaintiffs exhaust intracorporate remedies so that courts may properly focus on the motivations fueling a board's decision rather than the decision's merits. *See Iron Workers Local No. 25 Pension Fund ex rel. Monolithic Power Sys., Inc. v. Bogart*, 2012 WL 2160436, at *2 (N.D. Cal. 2012).

Rule 23.1 does not establish the circumstances under which demand would be futile; rather, the law of the Wynn Resorts's incorporating state, Nevada, sets that standard.. *In re Silicon Graphics, Inc. Secs. Litig.*, 183 F.3d 970, 989–90 (9th Cir. 1999), *abrogated on other grounds as recognized in S. Ferry LP, # 2 v. Killinger*, 542 F.3d 776, 784 (9th Cir. 2008).

In determining whether a complaint adequately alleges a demand was futile, Nevada courts will apply the standards articulated by the Delaware Supreme Court. The Nevada Supreme Court has stated "[t]he Delaware court's approach is a well-reasoned method for analyzing demand futility and is highly applicable in the context of Nevada's corporations law." *Shoen v. SAC Holding Corp.*, 137 P.3d 1171, 1184 (Nev. 2006) (following *Aronson v. Lewis*, 473 A.2d 805, 812 (Del. 1984*), overruled in part on other grounds by Brehm v. Eisner*, 746 A.2d 244, 254 (Del. 2000), *and modified by Rales v. Blasband*, 634 A.2d 927, 933 (Del.1993)); *see also In re Amerco Derivative Litig.,* 252 P.3d 681 (Nev. 2011).

The first prong of the *Aronson* test asks whether the shareholder has pleaded "with particularity facts that establish that demand would be futile because the directors are not independent or disinterested." *In re J.P. Morgan Chase & Co. S'holder Litig.*, 906 A.2d 808, 820 (Del. Ch. 2005) (internal citations omitted). The second prong of the test asks whether there is a reasonable doubt that "the challenged transaction was otherwise the product of a valid exercise of business judgment." *Id.* These prongs are in the disjunctive, and therefore, "if either prong is satisfied, demand is excused." *Brehm*, 746 A.2d at 256.

A derivative plaintiff's failure to adequately plead futility of demand justifies "dismissal of the complaint . . . ." *Shoen*, 137 P.3d at 1180.

. . .

. . .

James C. Mahan
U.S. District Judge

- 5 -

## IV. Discussion

It is uncontested that plaintiffs did not make an effort to obtain the desired action from the board of directors as required by Fed. R. Civ. P. 23.1(a). Therefore, plaintiffs' complaint must adequately allege their demand was futile in order to survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6). Nevada law establishes that a shareholder seeking to bring a derivative suit on behalf of a corporation must demand that the board of directors address the alleged harm before the shareholder brings the suit unless the shareholder can show demand would have been futile. Nev. Rev. Stat. § 41.520(2); *Shoen*, 122 Nev. at 634.

### (1) Futility of plaintiffs' demand

A plaintiff that elects against making a pre-suit demand bears the burden of showing why the demand would have been futile. *Beam ex rel. Martha Stewart Living Omnimedia, Inc.* v. *Stewart*, 845 A.2d 1040, 1048-49 (Del. 2004). Failure to adequately plead demand futility warrants dismissal of the complaint. *Shoen*, 122 Nev. at 634, 137 P.3d at 1180.

#### (A) Directors are not independent or disinterested

Plaintiffs allege that their failure to make a pre-suit demand is excused as futile because a majority of the board is not disinterested and independent. To support this claim, plaintiffs assert: (1) defendants face a substantial likelihood of personal liability, and (2) S. Wynn has domination of the board.

"[T]o show interestedness, a shareholder must allege that a majority of the board members would be materially affected, either to [their] benefit or detriment, by a decision of the board, in a manner not shared by the corporation and the stockholders." *Id.* at 639. "No issue" of self-interest exists where directors did not stand on both sides of the transaction or receive any personal financial benefit. *In re J.P. Morgan Chase & Co. S'holder Litig.*, 906 A.2d 808, 821 (Del. Ch. 2005), *aff'd*, 906 A.2d 766 (Del. 2006).

. . .

. . .

. . .

### (I) Defendants face substantial likelihood of personal liability

Plaintiffs argue that the defendants face a substantial likelihood of personal liability in the instant matter, and therefore, plaintiffs are excused from making a pre-suit demand. However, plaintiffs have done no more than allege the individual board members may be held personally liable.

To support these allegations, plaintiffs cite the ongoing DOJ investigation, and previous investigations by the GCB and the SEC concerning the Macau donation. The fact that the SEC and GCB determined there was no issue with the Macau donation reduces the likelihood defendants will be held personally liable.

Furthermore, the mere allegation that the DOJ is investigating the Macau donation is not enough to rise to the level to impute substantial likelihood of personal liability on the individually named defendants. Because the test plaintiffs must meet is that the directors face the "substantial likelihood" of personal liability, the amended complaint does not satisfy this claim. *See Shoen* v. *SAC Holding Corp.*, 122 Nev. 621, 640 (2006).

Plaintiffs have not argued that actions by individual defendants make them substantially likely to be held personally liable to survive the heightened Rule 23.1 standard. Accordingly, plaintiffs' argument that their demand is excused as futile because defendants face a substantial likelihood of personal liability fails.

### (ii) S. Wynn has domination of the board of directors

Plaintiffs argue that S. Wynn had a personal interest in the share redemption and that a sufficient number of other directors are beholden to him such that a majority of the current board is disqualified, thus excusing demand. In order to show S. Wynn dominated the board of directors, plaintiffs must plead sufficient facts to show that Wynn Resorts' current directors are "beholden" to S. Wynn such that they would be unable to consider a demand on its merits. *Shoen*, 137 P.3d at 1183.

For the sake of this motion, defendants do not contest that S. Wynn was interested in the share redemption and is not independent. *See* (doc. # 137, at 9, n. 4). This court has already found that E. Wynn, Chen, and Schorr lack independence. (Doc. # 102, at 12). Therefore, in order to show

that S. Wynn has domination of the board of directors, plaintiffs must present allegations with sufficient particularity that at least two other board members lack independence.

There are twelve members on the Wynn Resorts' board of directors. One board member, John J. Hagenbuch is a non-party to the instant matter. Plaintiffs have never alleged Mr. Hagenbuch lacks independence. Furthermore, defendants addressed board members Irani's and Shoemaker's independence in their moving brief (doc. # 130) and plaintiffs did not respond to defendants' arguments in their opposition (doc. # 135). Therefore, in the instant matter, the court will only address the independence of board members: Miller, Moran, Virtue, and Wayson.

"Independence is a fact-specific determination made in the context of a particular case." *Beam*, 845 A.2d at 1049. Where "the actual extent of the [alleged] relationships is not altogether clear at this point in the litigation, the existence of these interests and relationships is enough to defeat a motion to dismiss." *In re New Valley Corp.*, 2001 WL 50212, at *8 (Del. Ch. 2001). The legal proposition in question is that while "a close family relationship can disqualify a director . . . , business, social, and more remote family relationships are not disqualifying, without more." *In re AMERCO Deriv. Litig.*, 252 P.3d 681, 706 (2011) (Pickering, J., concurring in part and dissenting in part).

### a. Miller

Plaintiffs allege that Wynn and Miller have been friends for forty years and that Wynn has played a significant role in Miller's political success. Plaintiffs substantiate these allegations by pointing to (1) a $70,000 donation to Miller's 1994 gubernatorial campaign, (2) a threat Wynn made against an opponent of Miller's in the 1994 election, (3) Miller's testifying on Wynn's behalf in a 1997 libel case, and (4) Wynn's business relationship to a company Miller is affiliated with.

Without more, the court does not find that plaintiffs have met their burden to rebut the presumption of independence. Allegations of a long friendship, alone, are insufficient–even if the friend did testify on the interested director's behalf. *See In re AMERCO Deriv. Litig.*, 252 P.3d at 706 (Pickering, J., concurring in part and dissenting in part). Further, plaintiffs have not alleged a campaign contribution of such a significant magnitude to plausibly claim that Miller lacks

James C. Mahan
U.S. District Judge

- 8 -

1  independence nineteen years after the contribution was made. Lastly, the fact that Miller is a director
2  for International Gaming Technology ("IGT"), a company that sells products to S. Wynn, is a
3  business relationship and thus insufficient to establish a lack of independence. *See Khanna v.*
4  *McMinn*, 2006 WL 1388744, at *15 (Del. Ch. 2006).

### b.    Moran

Plaintiffs allege that Moran and S. Wynn have been friends for thirty years. Plaintiffs specially allege that S. Wynn donated $1 million to the Moran Eye Center at the University of Utah in 1993 and made another "large donation" after the new Moran Eye Center opened in 2007. Plaintiffs also allege that S. Wynn made a "large donation" to Senator Bob Dole's 1996 presidential campaign to which Moran was the finance chair.

After considering whether these allegations cast doubt as to Moran's independence, the court finds that they do not. While $1 million is a considerable amount of money, this donation was made twenty years ago and was not a financial gift from which Moran personally benefitted. Further, the other donations are not alleged with sufficient particularity for the court to draw an inference that Moran would feel beholden to S. Wynn. Allegations of a lengthy friendship are not enough to assert Moran was beholden to S. Wynn. *See In re AMERCO Deriv. Litig.*, 252 P.3d at 706 (Pickering, J., concurring in part and dissenting in part). In addition, because the donation S. Wynn made occurred twenty years ago and did not personally benefit Moran, it does not create a relationship such that Moran cannot act independently. Accordingly, plaintiffs have not alleged with sufficient particularity reasons why Moran would be beholden to S. Wynn.

Even still, because Moran was not on the board at the time the amended complaint was filed, he is irrelevant to the court's consideration of whether demand should be excused as futile. *Braddock v. Zimmerman*, 906 A.2d 776, 786 (Del. 2006) (when "a [derivative] complaint is amended with permission following a dismissal without prejudice . . . [the] demand inquiry must be assessed by reference to the board in place at the time when the amended complaint is filed").

. . .

. . .

James C. Mahan
U.S. District Judge

### c. Virtue

Plaintiffs allege Virtue has received personal financial benefits from his business relationship with S. Wynn. Virtue is CEO of MidOcean Partners ("MidOcean"). One of the conditions of Virtue joining the board of directors was S. Wynn could close accounts at MidOcean which generated fees for Virtue. In exchange, Virtue was granted options for Wynn's shares valued at over $1 million.

Defendants clarify these options are in line with the number that has been awarded to each of Wynn Resorts' outside directors in accordance with the company's policy of aligning directors' interests with those of the shareholders. Furthermore, S. Wynn's ability to close accounts with MidOcean and generate fees for Virtue existed as a condition to Virtue joining the board. This does not suggest a relationship that would indicate Virtue is beholden to S. Wynn, but rather that a business agreement previously existed between the two where both parties could benefit financially. *See Shoen*, 137 P.3d at 1183. Such a relationship does not "border on. . . familial loyalty and closeness." *Beam*, 845 A.2d at 1050. Therefore, plaintiffs have not alleged with sufficient particularity that Virtue could not form business decisions independently.

### d. Wayson

Plaintiffs allege that S. Wynn has been close with Wayson since they were young, as their fathers had a business relationship in the 1950s operating a bingo hall together. Plaintiffs also point to S. Wynn's past employment of Wayson and of Wayson's siblings.

Plaintiffs do not allege sufficient facts to raise a reasonable doubt as to Wayson's independence. The mere existence of a friendship is insufficient to suggest Wayson is beholden to S. Wynn. *See In re AMERCO Deriv. Litig.*, 252 P.3d at 706 (Pickering, J., concurring in part and dissenting in part). While current employment (outside of that as a director) of Wayson or one of Wayson's sibling might call into question one's independence, no such allegation was made here. Rather, plaintiffs merely allege past employment of Wayson and Wayson's siblings.

Plaintiffs' allegations of domination against Miller, Moran, Virtue, and Wayson fail to show they were beholden to S. Wynn. To demonstrate a board member is dominated by another, the plaintiffs must allege that the board member is unable to consider a business decision on its merits.

**James C. Mahan**
**U.S. District Judge**

- 10 -

1  *Shoen*, 137 P.3d at 1183. While plaintiffs have demonstrated lengthy personal and business
2  relationships between board members and S. Wynn, they do not rise to the level to indicate Miller,
3  Moran, Virtue, or Wayson lacked independence or were unable to objectively consider a transaction.
4  Accordingly, plaintiffs have not alleged with particularity sufficient facts to show that two more
5  directors lack independence to establish that a majority of the board is interested under *Shoen* to
6  excuse the demand requirement.

       **(B)**     **Reasonable doubt underlying transaction was a valid exercise of business judgment**

9  Under the second prong of *Aronson*, demand is futile if there is a reasonable doubt that the
10 board's decision was a valid exercise of business judgment. *Shoen*, 137 P.3d at 112; *Aronson*, 473
11 A.2d at 814. The business judgment rule presumes that in making a business decision, the directors
12 of a corporation acted on an informed basis, in good faith, and in the honest belief that the action
13 taken was in the company's best interest. *Shoen*, 137 P.3d at 1178-79. To rebut this presumption,
14 plaintiffs must allege "facts sufficient to raise (1) a reason to doubt that the action was taken honestly
15 and in good faith or (2) a reason to doubt that the board was adequately informed in making the
16 decision." *In re Walt Disney Co. Derivative Litig.*, 825 A.2d 275, 286 (Del. Ch. 2003).

17 Nev. Rev. Stat. § 78.138(3) provides that "[d]irectors and officers, in deciding upon matters
18 of business, are presumed to act in good faith, on an informed basis and with a view to the interests
19 of the corporation." "[E]ven a bad decision is generally protected by the business judgment rule's
20 presumption . . . ." *Shoen*, 137 P.3d at 1181. Plaintiffs carry a "heavy burden" in this regard. *Id.*

21 Plaintiffs allege that the Macau donation was a bribe to Macau government officials in
22 exchange for a second land concession to expand Wynn Macau. Plaintiffs' allegation is based on the
23 size and timing of the Macau donation–$135 million, over ten years, including $25 million two
24 months before the Macau government approved the land concession agreement. Plaintiffs claim that
25 the board's approval of the Macau Pledge was not a valid exercise of business judgment for two
26 reasons: first, it was not made in good faith; and second, the board was not adequately informed.

**James C. Mahan**
**U.S. District Judge**

Plaintiffs' allegation that the donation was made in an effort to foster the land concession agreement is not stated with sufficient particularity to impart bad faith onto the directors. The complaint lacks allegations that defendants knew they were engaged in wrongdoing in approving the Macau donation. At most, the complaint alleges that defendants knew the donation was made in an effort to obtain the land concession and recites the obligations of the company under the FCPA; however, this does not demonstrate bad faith on behalf of the directors in approving the Macau donation. Plaintiffs' argument that Macau was "ripe for political corruption" is not stated particularly enough to impute the board had bad faith. Without allegations that the donation was made to advance some interest other than the company's welfare or that the directors had knowledge of the violation of the law, the court finds that the business judgment rule presumption still applies.

Directors "have a duty to inform themselves, prior to making a business decision of all material information reasonably available to them." *Aronson*, 473 A.2d at 812. Plaintiffs argue that in light of the suspicious circumstances surrounding the donation, the directors failed to consider material that was critical to making an informed decision. Plaintiffs, however, have not met their burden. Plaintiffs fail to allege that informative materials were reasonably available but not considered. The court finds that plaintiffs have not met the heightened pleading standard of Rule 23.1.

Instead, plaintiffs allege that S. Wynn purported to have a legal opinion that sanctioned the transaction, but that S. Wynn did not provide this opinion to the board. This allegation does not establish reason to doubt that the board was adequately informed for two reasons: (1) plaintiffs have not alleged that any defendant, other than S. Wynn, knew of the legal opinion at the time the transaction was approved; and (2) the legal opinion allegedly is in support of the transaction plaintiffs' challenge.

Plaintiffs argue that defendants should have consulted legal counsel before making the Macau donation, especially when legal counsel was available to the board. However, plaintiffs have not stated with sufficient particularity that seeking legal advice would have had an impact on the board's decision to approve the Macau donation. Plaintiffs allege that defendants were aware of agencies like

**James C. Mahan**
**U.S. District Judge**

1  the SEC, DOJ, and GCB investigating similar donations to the Macau government. Even still,
2  plaintiffs fail to meet the heightened pleading standard of Rule 23.1 to state with sufficient
3  particularity that consulting legal counsel was necessary and failing to do so indicates a failure to act
4  on an informed basis.

5  Plaintiffs further contend that a majority of the relevant directors have a disabling interest
6  that would prevent them from impartially considering a demand with respect to plaintiffs' breach
7  of fiduciary duty claim arising out of the redemption of Okada's shares. Plaintiffs allege that
8  converting Okada from an equity holder to a debt holder had no effect on his purported status as an
9  "unsuitable" person and that this conversion encumbered the company with a $1.9 billion debt and
10 associated litigation expenses.

11 The company's articles of incorporation authorize the directors to redeem the shares of an
12 "unsuitable" shareholder and permits the exchange of a shareholder's equity stake for a promissory
13 note. (Doc. # 100, Ex. 2, Art. VII, §§ 1(j), 2). Thus, the articles envisioned circumstances in which
14 shares would been redeemed in exchange for debt. On this basis, the court does not find that
15 encumbering the company with a debt obligation permitted by the articles of incorporation falls
16 outside the protections afforded by the business judgment rule.

17 Accordingly, plaintiffs have failed to demonstrate that they should be excused from the pre-
18 suit demand requirements under either *Aronson* prong. Plaintiffs' complaint shall be dismissed for
19 failure to adequately plead the futility of pre-suit demand.

20 **V.     Conclusion**

21 The plaintiffs have failed their burden to show demand would have been futile. Nev. Rev.
22 Stat. § 41.520(2); *Shoen*, 122 Nev. at 634. The plaintiffs did not allege with sufficient particularity
23 that the board of directors was disinterested or lacked independence, or that there was reasonable
24 doubt that there was a valid exercise of business judgment. Therefore, this court will grant the
25 defendants' motion to dismiss. In the amended complaint, plaintiffs largely re-raise the same issues
26 the court addressed in defendants' first motion to dismiss. (Doc. # 122). "Dismissal without leave
27 to amend is appropriate only when the court is satisfied that the deficiencies in the complaint could
28

**James C. Mahan**
**U.S. District Judge**

- 13 -

not possibly be cured by amendment." *See Jackson v. Carey*, 353 F.3d 750, 758 (9th Cir. 2003). Accordingly, "repeated failure to cure deficiencies by amendments previously allowed" can justify denying leave to amend. *See Foman* v. *Davis*, 371 U.S. 178, 182 (1962). Therefore, the plaintiffs' amended complaint shall be dismissed without prejudice.

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the motion to dismiss filed by defendants S. Wynn, Chen, Goldsmith, Irani, Miller, Moran, Schorr, Shoemaker, Wayson, E. Wynn, and Zeman, (doc. # 130), be, and the same hereby is, GRANTED.

IT IS FURTHER ORDERED that plaintiffs' complaint is dismissed without prejudice.

DATED March 13, 2014.

**UNITED STATES DISTRICT JUDGE**